IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THOMAS SPRAGGINS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 05 C 3551 |
| ) | |
| v. ) | Judge Ronald A. Guzmán |
| ) | |
| STATE OF ILLINOIS, ILLINOIS STATE ) | |
| TOLL HIGHWAY AUTHORITY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Thomas Spraggins has sued the State of Illinois and the Illinois State Toll Highway Authority ("Tollway") for failing to transfer him and for terminating him based on race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII").[1] The Tollway, the sole remaining defendant, has moved for summary judgment. For the reasons provided in this Memorandum Opinion and Order, the Court grants the motion.

### Facts

Unless otherwise noted, the following facts are either undisputed or are deemed admitted because the party's response failed to comply with Federal Rule of Civil Procedure 56(e) or Local Rule 56.1. *See Bradley v. Work*, 154 F.3d 704, 708 (7th Cir. 1998); *see also Dority v. City of Chi.*, No. 98 C 4893, 2001 WL 1155286, at *4 (N.D. Ill. Sept. 28, 2001), *aff'd*, 50 Fed. Appx. 760 (7th Cir. 2002) (striking submissions which are not in strict compliance with Local Rule 56.1).

---

[1] When Spraggins amended his Complaint, he dropped his claim against the State of Illinois. Accordingly, the Illinois Tollway Authority remains as the sole defendant.

The Court notes as a preliminary matter that neither party has fully complied with Local Rule 56.1, a rule which this Court strictly enforces. First, the Tollway has submitted, in addition to its response to Spraggins' statement of additional facts, a reply to Spraggins' responses to the Tollway's statement of facts, as well as additional uncontested facts. Because Local Rule 56.1 does not contemplate a reply to a nonmovant's responses to a movant's statement of facts or additional uncontested facts filed by the movant, the Court strikes the submissions. Second, Spraggins, represented by counsel, submitted a statement of additional facts that contains 137 separately numbered statements. Local Rule 56.1(b)(3)(C) mandates that the respondent to a summary judgment motion is limited to no more than forty separately numbered statements of additional facts, absent prior leave of court, which was not obtained in this case. As such, the Court only considers the first forty of Spraggins' additional facts and strikes the rest.

Thomas Spraggins is African American and was hired by the Tollway in 1994 as a toll collector. (Def.'s LR 56.1(a)(3) ¶¶ 1, 6; *see* Am. Compl. ¶ 4.) Accurate toll collection is an essential part of the toll collector position. (Def.'s LR 56.1(a)(3) ¶ 7.) When a toll collector has a problem accounting for a vehicle passing through his collection lane, he must complete an unusual occurrence report to document the problem. (*Id.* ¶ 8.) To verify toll collector accuracy, each lane is equipped with a "loop" that counts the vehicles passing through the lane. (*Id.* ¶ 10.) As a further check on accuracy, each lane is equipped with a "treadle" that counts the axles that pass through the lane. (*Id.* ¶ 11.) The data collected during a shift from the loop, treadle, collector-inputted information and Automated Vehicle Identification is reconciled by the STAR system (computer system) according to plaza, lane number and toll collector badge number. (*Id.* ¶ 13.)

If the axle or cash errors exceed a predetermined adjustable threshold during a toll collector's shift, the STAR system automatically generates a report, known as a "TC-32." (*Id.* ¶ 16.) The TC-32s are forwarded to Toll Services and then served upon the toll collector. (*Id.* ¶ 17.) There is no discretion in the issuance of TC-32s to toll collectors. (*Id.* ¶ 69.)

Throughout his employment with the Tollway, Spraggins had difficulty accounting for the vehicles passing through his lane and the cash he received. (*Id.* ¶ 19.) As a result, during his employment with the Tollway, he received 163 TC-32s.[2] (*Id.* ¶ 18.) On July 14, 1994, August 13, 1996, and November 23, 1998, the Tollway issued a written warning to Spraggins based on his unacceptable performance. (*Id.* ¶¶ 30, 35, 43.) On March 11, 1994, January 22, 1996, and August 3, 1998, the Tollway notified Spraggins in writing that due to his unacceptable performance, he was required to undergo retraining. (*Id.* ¶¶ 29, 32, 41.) On October 7, 1994, November 12, 1996, and May 4, 1999, Spraggins received a one-day suspension for his unacceptable performance. (*Id.* ¶¶ 31, 36, 44.) On February 3, 1997 and September 22, 1999, Spraggins received a three-day suspension for unacceptable performance. (*Id.* ¶¶ 37, 46.) On June 20, 1997, Spraggins received a five-day suspension for unacceptable performance. (*Id.* ¶ 39.)

Spraggins also repeatedly violated the Tollway's attendance policy. On February 12, 1996 and May 5, 1996, he received a written warning for approximately twenty attendance violations, which ranged from being tardy to refusing to attend work. (*Id.* ¶¶ 33-34.) On April 17, 1997, he received a one-day suspension based on attendance violations. (*Id.* ¶ 38.) On January 26, 1998, he received a two-day suspension based on attendance violations. (*Id.* ¶ 40.) On August 12, 1998, he received a five-day suspension based on attendance problems. (*Id.* ¶

---

[2]Although Spraggins denies this fact statement, his denial is unsupported by the cited portion of the record. (*See* Pl.'s LR 56.1(b)(3)(B) ¶ 18; Def.'s Ex. 1 to Ex. A.) Accordingly, this fact statement is deemed admitted.

3

42.) On August 10, 1999, he received a six-day suspension based on attendance violations. (*Id.* ¶ 45.)

In November 1999, Spraggins was transferred at his request to Toll Plaza 51. (Def.'s LR 56.1(a)(3) ¶ 56.) From November 1999 to May 2001, Spraggins worked at Toll Plaza 51 under the supervision of Robin Foreman, an African-American woman. (Def.'s LR 56.1(a)(3) ¶¶ 57-58.) While working at Plaza 51, Spraggins received warnings and multiple suspensions of varying duration. (*Id.* ¶¶ 59-60.) He received warnings and suspensions from several individuals, including Neal MacDonald, the Toll Services Manager who was responsible for issuing suspensions and terminating employees, (*id.* ¶ 28; Pl.'s LR 56.1(b)(3)(C) ¶ 5), and Foreman. (*See, e.g.*, Def.'s Ex. 2 to Ex. A, Letter from MacDonald to Spraggins of 1/31/2000 at 000082 (issuing five-day suspension); *id.*, Letter from Foreman to District Supervisor and Administrative Support Manager of 5/19/2000 at 000141 (advising Spraggins that Foreman requested disciplinary action); *id.*, Letter from MacDonald to Spraggins of 7/12/2000 at 000078 (issuing ten-day suspension).) Susan K. H. Sinz, Employee Services Manager, issued a letter to Spraggins advising him that he was terminated as of May 23, 2001. (Def.'s LR 56.1(a)(3) ¶ 65.)

On November 15, 2001, Spraggins filed a charge with the Equal Opportunity Employment Commission ("EEOC") alleging wrongful termination as a result of race-based discrimination. (Am. Compl. ¶ 47.) The EEOC issued Spraggins a "Notice of Right to Sue" on March 31, 2005. (*Id.* ¶ 48.). On June 17, 2005, Spraggins filed the instant lawsuit.

## Discussion

Pursuant to Federal Rule of Civil Procedure 56(c), the Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When considering evidence submitted by the parties, the court does not weigh it or determine the truth of asserted matters. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, all facts must be viewed and all reasonable inferences drawn in the light most favorable to the non-moving party. *Baron v. City of Highland Park*, 195 F.3d 333, 337 (7th Cir. 1999). If a reasonable jury could not find for the party opposing the motion, it must be granted. *Seshadri v. Kasraian*, 130 F.3d 798, 804 (7th Cir. 1995).

The Tollway moves for summary judgment and argues that Spraggins has failed to create a genuine issue as to a material fact regarding whether it discriminated against him based on race when it did not transfer him to the position of lane walker and terminated him. Title VII prohibits employers from discriminating against an employee based on race. 42 U.S.C. § 2000(e)-2(a)(1). The burden is on the plaintiff to prove intentional discrimination by a preponderance of the evidence. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993). A plaintiff can make out his discrimination claim through either the direct or indirect method. *Huff v. UARCO Inc.*, 122 F.3d 374, 380 (7th Cir. 1997).

Spraggins has chosen the indirect method. (Pl.'s Opp'n Def.'s Mot. Summ. J. 9.) Under the indirect method, a plaintiff may prove his claim by using the burden-shifting approach set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under this approach, a plaintiff must first make out a *prima facie* case of discrimination by establishing that: (1) he is a member of a protected class; (2) he was meeting his employer's legitimate business expectations; (3) he was subjected to a materially adverse employment

5

action; and (4) other employees who were similarly situated but outside of the protected class were treated more favorably. *Id.* at 802-05.

With regard to his termination claim, the Tollway concedes that Spraggins meets the first and third prongs of the *McDonnell Douglas* test. As an African-American, he is a member of a protected class, and his termination is a materially adverse employment action.

With regard to his failure-to-transfer claim, again, the first prong is satisfied, but the third is not. Where a transfer offers similar pay and benefits, a refusal to grant a request for a transfer does not constitute an adverse employment action. *Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 275 (7th Cir. 2004). Spraggins has not provided any statement of fact with citation to supporting evidence that a transfer to the lane walker position would have provided him with better pay or benefits than the toll collector position. Further, the record shows that there is no difference in salary and that the two positions worked together side by side before the lane walker position was eliminated altogether when I-PASS was implemented. (Pl.'s Ex. 10, Dell Dep. at 11, 13; Def.'s Ex. 5 to Ex. A, Local 73 Toll Collectors & Lane Walkers Collective Bargaining Agreement ¶ 14.2 (treating positions interchangeably).) Because the denial of a lateral transfer does not rise to the level of an adverse employment action, and because Spraggins has failed to raise a genuine issue of material fact for trial, the Court grants the Tollway's motion for summary judgment as to this claim.

Even if Spraggins could establish that the Tollway's refusal to transfer him to the lane walker position was an adverse employment action, the Court would still grant the Tollway's motion for summary judgment on this claim (and his termination claim, for that matter) because he has failed to establish a triable issue regarding whether he was meeting his employer's

legitimate business expectations and whether similarly situated employees outside of the protected class were treated more favorably.

The Tollway says Spraggins was not meeting its legitimate business expectations because he was repeatedly warned and disciplined regarding toll collection errors and attendance violations. Spraggins argues that the Tollway tolerated employees' accumulation of numerous TC-32s and thus, accuracy in toll collection is not one of its legitimate business expectations. Specifically, he points to another employee who received a retraining memo for unacceptable performance on January 22, 1996, a written warning for the same on August 13, 1996, and a two-day suspension for the same on November 12, 1996, a three-day suspension for the same on March 18, 1997, and a five-day suspension for the same on June 2, 1997. (Pl.'s LR 56.1(b)(3)(C) ¶¶ 34, 37-40.) Moreover, Spraggins points out that on February 21, 1996, McDonald noted, without explanation, in that employee's file that the TC-32s incurred by that employee during September and October of 1995 were to be disregarded for cash activity performance evaluation purposes. (*Id.* ¶ 35.)

However, no reasonable jury could conclude from these facts that the Tollway did not legitimately expect toll collectors to perform accurately. As noted above, the other employee still underwent retraining for unacceptable performance pursuant to the January 22, 1996 memo, and received a written warning and a two-day suspension later that year for validation and cash activity errors. (*Id.* ¶¶ 34, 37-38.) Based on this evidence alone, no reasonable jury could conclude that the Tollway routinely disregarded employees' accumulation of numerous TC-32s or that it did not legitimately expect toll collectors to be accurate in their toll collection duty.

Even if the Tollway had a legitimate expectation that its toll collectors perform accurately, Spraggins says he was meeting that expectation. The Court finds the record devoid of such evidence.

Spraggins' toll collection errors resulted in his receiving at least 163 TC-32s from November 1997 to January 2001. (Def.'s Ex. 1 to Ex. A, Spraggins' TC-32 Totals.) He states that "toll collectors [sometimes] received TC-32s . . . as a result of improper accounting [or] failures of the system." (Pl.'s LR 56.1(b)(3)(C) ¶ 28.) This statement, however, is belied by the testimony and documentation he cites to support it. He cites the deposition testimony of Jacquelyn Dell, who says that she received one TC-32 because she misclassified a vehicle because the driver incorrectly reported the number of axles on it. (Pl.'s Ex. 10, Dell Dep. at 30-33.) Thus, Dell testified it was human, not accounting or system, error that caused her to receive the TC-32. Dell also testified that at larger toll plazas, more TC-32s were issued. (*Id.*) However, Spraggins does not provide any evidence that the issuance of more TC-32s at larger toll plazas is due to improper accounting or system failure, rather than human error. (*See id.* at 34.) In short, Dell's testimony does not support the statement that toll collectors sometimes received TC-32s due to improper accounting or system failure.

Further, the Audit Reports on which Spraggins relies do not establish that employees received TC-32s due to improper accounting or system failure. The 1998 Audit Report merely addresses the Tollway's disaster contingency planning, computer security, and internal audit procedures regarding a health benefit program. (*See generally* Pl.'s Ex. 1, 1998 Audit Report.)

The 1999 and 2000 Audit Reports state that the Tollway did not maintain the data for cash receipt reconciliation when equipment was reset to make repairs, and the 2000 Audit Report

stated that 4.87% of the lanes in the system were reset each month in the year ending December 2000. (Pl.'s Ex. 2, 2000 Audit Report 3.)

Spraggins, however, has not provided evidence that any of the 163 TC-32s issued to him was the result of lost data due to resetting the equipment in his assigned lane. Spraggins merely states that from time to time, the Tollway's counting equipment broke down and the maintenance person would close the lane to repair the equipment, but he does not state whether and how often such repairs were necessary in his assigned lane. (Pl.'s LR 56.1(b)(3)(C) ¶¶ 16-18.) In sum, he offers nothing but sheer speculation that the 163 TC-32s he received were for toll collection errors due to data lost when the equipment was reset. However, a plaintiff opposing summary judgment "must create more than mere doubt as to the material facts, and will not prevail by relying on a mere scintilla of evidence or speculation to support h[is] position." *Packman v. Chi. Tribune Co.*, 267 F.3d 628, 637 (7th Cir. 2001).

Further, even if Spraggins could create a genuine issue of material fact as to whether he was meeting the Tollway's legitimate expectation of adequate performance in toll collection, he has failed to create a triable issue as to whether he was meeting the Tollway's legitimate expectation of attendance. "It should not require saying that generally attendance is a requirement of a job." *Waggoner v. Olin Corp.*, 169 F.3d 481, 483 (7th Cir. 1999). Accordingly, "[t]he Seventh Circuit has considered an employee's attendance record a relevant factor in resolving claims of employment discrimination under Title VII." *Campbell v. Dominick's Finer Foods, Inc.*, 85 F. Supp. 2d 866, 871 (N.D. Ill. 2000). This is especially true where, as in this case, a job cannot be performed at home. *See E.E.O.C. v. Yellow Freight Sys., Inc.*, 253 F.3d 943, 949 (7th Cir. 2001).

Spraggins does not argue that toll collection did not require his attendance. Moreover, Spraggins provides four occasions on which a white employee was warned or suspended for attendance violations. (*See* Pl.'s LR 56.1(b)(3)(C) ¶¶ 31-33, 36.) Thus, the only facts properly before the Court regarding attendance support that the Tollway legitimately expected its toll collectors to attend work and punished those who did not.

Further, the record shows that Spraggins violated the Tollway's attendance policy on numerous occasions. On February 12, 1996 and May 5, 1996, he received a written warning for approximately twenty attendance violations, which ranged from being tardy to refusing to attend work. (*Id.* ¶¶ 33-34.) On April 17, 1997, he received a one-day suspension based on attendance violations. (*Id.* ¶ 38.) On January 26, 1998, he received a two-day suspension based on attendance violations. (*Id.* ¶ 40.) On August 12, 1998, he received a five-day suspension based on attendance problems. (*Id.* ¶ 42.) On August 10, 1999, he received a six-day suspension based on attendance violations. (*Id.* ¶ 45.) After that time, his attendance did not improve. (Ex. 2 to Ex. A, Letter from Foreman to District Supervisor and Administrative Support Manager of 5/19/2000 at 000141.) He continued to violate the Tollway's attendance policy on ten other occasions, the last of which was on May 13, 2000, when he called in sick after his request to take that day as a vacation day was denied. (*Id.*) Foreman, Spraggins' supervisor at Plaza 51, noted that Spraggins' attendance problems continued to place a "hardship on his co-worker[s]." (*Id.*)

Based on the record before the Court, no rational jury could find that Spraggins was meeting the Tollway's legitimate expectation of attendance. Accordingly, the Court grants the Tollway's motion for summary judgment on that basis.

After buckling the proverbial belt, the Court now proceeds to one of the suspenders. Even if Spraggins were able to establish that he was meeting the Tollway's legitimate

10

expectations, he has not provided, in either his response to the Tollway's statement of facts or his statement of forty additional facts, evidence that any Caucasian employee was similarly situated but treated better than him. "To determine whether employees are similarly situated for the purposes of analyzing a Title VII . . . claim, the employees must be directly comparable in all material respects." *Hudson v. Chi. Transit Auth.*, 375 F.3d 552, 561 (7th Cir. 2004).

Spraggins argues that Caucasian toll collectors were not terminated when they experienced problems with toll collection resulting in excessive TC-32s. His response to the Tollway's statement of facts and his statement of forty additional facts fail to raise or address the issue. Even if the Court were to have considered Spraggins' statement of 137 additional facts in its entirety, the record is devoid of any evidence that any other Caucasian employee had anything close to the number of TC-32s that were issued to Spraggins. Therefore, Spraggins has failed to point to any comparable employee who was not in the protected class and received better treatment.

Finally, the Court raises the other suspender. Even if Spraggins could establish his *prima facie* case of race discrimination, the Tollway has articulated a legitimate, nondiscriminatory reason for his termination, *i.e.*, his unacceptable performance based on an excessive number of TC-32s[3] and a poor attendance record, and Spraggins has not satisfied his ultimate burden of showing that the Tollway's reasons are a pretext. *See Raytheon Co. v. Hernandez*, 540 U.S. 44, 50 n.3 (2003). "The focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise, or well-considered." *Stewart v. Henderson*, 207 F.3d 374, 378 (7th Cir. 2000). "[A] determination of whether a belief is honest is often conflated with

---

[3]The vast majority of the 163 TC-32s issued to Spraggins resulted in a loss of revenue for the Tollway, ranging from $10.00 to $87.53 per incident. (Pl.'s LR 56.1(b)(3)(B) ¶ 68.)

analysis of reasonableness." *Gordon v. United Airlines, Inc.*, 246 F.3d 878, 889 (7th Cir. 2001) (quotations omitted).

Spraggins' response to the Tollway's statement of facts and his statement of forty additional facts do not address pretext. Even if the Court were to have considered Spraggins' statement of 137 additional facts in its entirety, the fact that other Caucasian toll collectors with at most thirty-two TC-32s were allowed to continue working does not cast doubt on the sincerity of the Tollway's reason for terminating Spraggins, who had accrued 163 TC-32s and continual attendance violations. Given the record in this case, no rational jury could find that the Tollway's proffered reasons for terminating Spraggins are unreasonable in light of his history of toll collection and attendance problems. Spraggins has failed to create a triable issue regarding pretext, and an entry of summary judgment in favor of the Tollway is appropriate.

## Conclusion

For the foregoing reasons, the Court grants the Tollway's motion for summary judgment [doc. no. 33-1]. This case is hereby terminated.

**SO ORDERED**  ENTERED: 1/23/07

HON. RONALD A. GUZMAN
**United States Judge**

12